# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2700

_____

| | |
|---|---|
| Patrick Harwood, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of South Dakota. |
| Kenneth S. Apfel, Commissioner, | * |
| Social Security Administration, | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted: May 12, 1999

Filed: August 13, 1999

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Patrick Harwood appeals the judgment of the district court,[1] which affirmed the denial of his application for social security disability benefits. The Social Security Administration denied Harwood's initial application, and an Administrative Law Judge denied benefits after a hearing. The Appeals Council denied Harwood's request for further review, and the ALJ's decision became the final decision of the Commissioner.

---

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

Harwood argues that the ALJ failed to fully and fairly develop the record, that the ALJ's decision ignores Harwood's limited intellectual abilities, and that the decision is otherwise not supported by substantial evidence. The district court held that Harwood waived the first two arguments because he failed to include them in his brief to the Appeals Council, and it rejected the third argument on its merits, holding that substantial evidence supported the ALJ's rejection of Harwood's subjective complaints of disabling pain. We affirm the judgment of the district court because we reject Harwood's arguments on their merits.

Harwood is forty-three years old, has a tenth-grade education, and formerly worked as a jewelry manufacturer and cleaner. He stopped working in September 1994 because he experienced pain throughout his shoulders, elbows, wrists, and hands. He applied for disability benefits on April 12, 1995, and the ALJ denied benefits in September 1996 after a hearing. The ALJ analyzed Harwood's claim through the familiar five-step process set out by the Social Security Regulations. See 20 C.F.R. § 404.1520(a)-(f) (1999); McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982). Harwood showed that he was unable to return to his previous employment, and at the fifth step of the process, the ALJ determined that Harwood could perform various jobs that exist in the national economy even though he could not work as a manufacturer and cleaner of jewelry. If Harwood can perform such jobs in the national economy, he is not "disabled" within the meaning of the Social Security Act. See Weiler v. Apfel, ___ F.3d ___, No. 98-1480, 1999 WL 404691, at *1 (8th Cir. June 21, 1999).

The ALJ's conclusion was predicated upon a hypothetical question that he posed to a vocational expert. Harwood's treating physician concluded that Harwood could perform "light" work with "no repetitive upper extremity activities," provided that he receive the "opportunity for mini rest breaks for his upper extremities and to rotate activities." The ALJ asked whether an individual with Harwood's skills, work experience and physical limitations could find any unskilled jobs in the national economy. The vocational expert responded that an individual fitting the ALJ's

description could find work as a parking enforcement officer, a parking lot attendant, a house-sitter, or a driver. Based largely upon this evidence, the ALJ concluded that Harwood was not entitled to disability benefits.

We must uphold the ALJ's decision if it is supported by substantial evidence. See Metz v. Shalala, 49 F.3d 374, 376 (8th Cir. 1995). Our task is not to reweigh the evidence, and we may not reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because we would have decided the case differently. See Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993); Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993). In determining whether substantial evidence supports the ALJ's decision, we must consider evidence in the record that supports the ALJ's decision as well as evidence that detracts from it. See Brockman v. Sullivan, 987 F.2d 1344, 1346 (8th Cir. 1993).

At the outset, we reject the Commissioner's argument that Harwood forfeited two of the three issues he now raises by failing to raise them before the Appeals Council. Although a party seeking judicial review of an agency action must generally exhaust available agency remedies and may not generally proceed upon an argument not made to the agency, see McCarthy v. Madigan, 503 U.S. 140, 144-45 (1992), the general rule makes little sense in this particular context. Several considerations compel the conclusion that Harwood has not waived the arguments that he did not specifically address to the Appeals Council.

First, the Commissioner urges us to adopt a waiver rule that the agency does not itself enforce. The Appeals Council routinely considers arguments not specifically raised by claimants before it--a product of its duty to review an ALJ's decision "in an informal, nonadversary (sic) manner" and a fitting analogue to the ALJ's well-established duty to develop a full and fair record (even when, as here, claimants are represented by counsel). See 20 C.F.R. §§ 404.900(b), 416.1400(b) (1999); Jon C. Dubin, Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion

-3-

Doctrine to Inquisitorial Administrative Proceedings, 97 Colum. L. Rev. 1289, 1325-26 and n. 179 (1997); Wilcutts v. Apfel, 143 F.3d 1134, 1137-38 (8th Cir. 1998) (stating that Commissioner has duty to develop record because hearing is non-adversarial; "The goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice.") (quotation omitted).

Second and relatedly, the Appeals Council's non-adversarial proceedings give claimants like Harwood no advance notice that issues not specifically raised will be forfeited. The Commissioner's own regulations establish a one-page form, the HA-520, through which claimants who lose before the ALJ may request review by the Appeals Council. See 20 C.F.R. § 422.205(a) (1999). The form provides a three-line space for claimants to articulate the grounds for appeal--and no warning of the waiver rule that the Commissioner now urges. See Dubin, supra, at 1305, 1332. Indeed, Harwood himself received no notice of such a waiver rule. The ALJ's written decision denying benefits stated that the Appeals Council "may review your case for any reason." Further, the decision warned Harwood that he could not obtain judicial review unless he first sought review by the Appeals Council, or unless the Council reviewed the ALJ's decision on its own motion. Nowhere did it state that Harwood would forfeit issues not raised to the Council, and the ALJ's reassurance that the Council "may review your case for any reason" misleadingly implies otherwise. In effect, the Commissioner urges us to deny judicial review to those claimants who have relied upon the agency's own professed duty to proceed in an "informal, nonadversary manner." We decline to do so.

Third, we are not persuaded by the cases cited in support of the Commissioner's position. As an initial matter, most of them involve issues that claimants failed to raise not only before the ALJ and the Appeals Council, but before the district court as well. See Weikert v. Sullivan, 977 F.2d 1249, 1254 (8th Cir. 1992); Johnson v. Chater, 108

F.3d 942, 945-46 (8th Cir. 1997).[2]  Obviously, there are reasons why we, an adversarial forum, choose not to review issues that parties do not raise to the district court, another adversarial forum, that have little bearing on whether a federal court should consider an issue not raised before the Social Security Appeals Council. Weikert and Johnson do not establish that one's failure to present an argument to the Appeals Council, without more, creates an insuperable bar to judicial review, and we believe the Commissioner reads them too broadly.  Furthermore, Weikert and Johnson are otherwise readily distinguishable.  Weikert involved a claimant's failure to preserve the argument that the ALJ "displayed such hostility to Weikert that [the ALJ's behavior] deprived Weikert of his right to an impartial hearing."  977 F.2d at 1254.  We declined to address the argument, for Weikert not only failed to present it to the district court, but failed to follow a specific procedure outlined by the agency for disqualifying an ALJ for prejudice.  See id.  There is no such analogous procedure involved in this case.  Johnson, moreover, primarily concerns the inability of a claimant to present new evidence to the district court through a motion to alter or amend the district court's judgment under Fed. R. Civ. P. 59(e), after having failed to do so at the first opportunity.  See 108 F.3d at 945-46.  We believe that Johnson's holding simply reflects Rule 59(e)'s limited purpose, and that it does not control the present case. Finally, the Commissioner directs our attention to numerous cases from other circuits. We find these cases either inapposite[3] or unpersuasive,[4] in light of the above

_____

[2]See also Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (same).  Riggins was issued after oral argument in the present case.

[3]The first of these, James v. Chater, 96 F.3d 1341, 1344 (10th Cir. 1996), is inapplicable on its face:  "[I]ssues not brought to the attention of the Appeals Council on administrative review may, given sufficient notice to the claimant, be deemed waived on subsequent judicial review." (emphasis added).  Two others, Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), amended by Meanel v. Apfel, ___ F.3d ___, No. 97-55827, 1999 WL 415342 (9th Cir. June 22, 1999), and Brewer v. Chater, 103 F.3d 1384, 1393 (7th Cir. 1997), concern arguments raised before neither the ALJ nor the Appeals Council--perhaps presenting a stronger case for a waiver rule.  Here,

discussion.

Addressing the merits of Harwood's claims, we first reject his argument that the ALJ did not fully and fairly develop the record. The ALJ's hypothetical question to the vocational expert included the findings of Harwood's treating physician, who concluded that Harwood could perform "light" work with "no repetitive upper extremity activities" if he received the "opportunity for mini rest breaks for his upper extremities and to rotate activities." The vocational expert testified that an individual with Harwood's skills, work experience, and physical limitations could work as a parking enforcement officer, a parking lot attendant, a house-sitter, or a driver. Harwood argues that the terms "repetitive" and "mini rest breaks" are ambiguous and that the ALJ should have clarified their meaning by posing interrogatories to Harwood's treating physician. In particular, Harwood argues that "repetitive" could, on one hand, describe a job involving the same motion throughout the day, or, on the other, a job involving the same motion performed for discrete periods of time during the day. Further, he argues, the phrase "mini rest breaks" does not specify the frequency or duration of the breaks that Harwood needs. We are unpersuaded. The vocational expert stated that none of the jobs that Harwood could perform "are in <u>any sense</u> repetitive," and the hypothetical question described one's need for "normal breaks" during the working day. "A proper hypothetical question presents to the vocational expert a set of limitations that mirror those of the claimant." <u>Hutton v.</u>

---

by contrast, the only procedural default alleged by the Commissioner and found by the district court is Harwood's failure to bring two particular issues to the Appeals Council's attention. We need not decide whether Harwood's apparent failure to raise two of his issues before the ALJ is fatal to his claims, but it strikes us as odd that Harwood could "waive" his argument that the ALJ should have acted <u>sua</u> <u>sponte</u> to develop the record more fully.

[4]<u>See</u> <u>Paul v. Shalala</u>, 29 F.3d 208, 210 (5th Cir. 1994) (no jurisdiction to review claim not raised before Appeals Council).

Apfel, 175 F.3d 651, 656 (8th Cir. 1999). Id. (quotation omitted). The hypothetical posed to the vocational expert could have been more precise, but we believe that it adequately described Harwood's limitations.

Harwood next argues that the ALJ's finding ignores various intellectual deficiencies discovered during a vocational assessment in July 1995 -- three months after Harwood applied for benefits. We reject this argument. First, Harwood misreads the record. The ALJ did not ignore the assessment, but rather declined to give it "any significant probative weight." Second, the ALJ's decision to discount the assessment was entirely reasonable. The assessment conflicted with those of Harwood's treating and examining physicians, and it primarily concerned various transferable skills without assessing any unskilled work that Harwood might be capable of performing (such as that described by the vocational expert). Further, Harwood's previous success as a cleaner and manufacturer of jewelry before the onset of his pain belies his claim that he lacks the intellectual capacity to perform the unskilled jobs described by the vocational expert. Although one's physical ability to perform a job does not necessarily imply that he or she "has the mathematical, reasoning, or language skills to perform the duties [of the job] on a full-time basis in a sometimes competitive and stressful environment in the working world," Titus v. Callahan, 133 F.3d 561, 562 (8th Cir. 1997), we believe that the ALJ did not err by assigning little probative weight to Harwood's alleged intellectual deficiencies.

Finally, Harwood attacks the ALJ's rejection of Harwood's subjective complaints of disabling pain. "[T]he ALJ must . . . set forth the inconsistencies in the record that lead him to reject the claimant's complaints." Jeffery v. Sec. of Health & Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). "In order to properly evaluate a claimant's subjective complaints of pain, the ALJ is required to make a credibility determination by taking into account the following factors: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors;

and (5) functional restrictions." <u>Hutton v. Apfel</u>, 175 F.3d 651, 654-55 (8th Cir. 1999) (citing <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984)).

Under these standards, we conclude that substantial evidence supports the ALJ's credibility determination. Harwood's treating physician performed a functional capacity assessment and determined that Harwood was capable of light work that did not involve repetitive upper extremity motions. An orthopedic surgeon, in turn, found that Harwood's upper extremity area was essentially normal with no localized tenderness or swelling, and determined that Harwood was capable of "light duty work" and should seek retraining for new job skills. Harwood told his physical therapist that he had only intermittent pain while working and no pain at rest or at night, and a physician who examined Harwood at the request of his workers' compensation carrier turned down Harwood's request for a slip stating that he could not work because the physician "really didn't think he was totally disabled from doing any type of job." At one point, Harwood was discharged from physical therapy for failing to reschedule missed appointments. <u>See</u> <u>Thomas v. Sullivan</u>, 928 F.2d 255, 259-60 (8th Cir. 1991) (failure to follow prescribed treatment is relevant to substantial evidence analysis). Harwood's day-to-day activities further supported the ALJ's credibility determination. The record showed that Harwood could care for his two-year-old child while his wife worked; that he could perform light housekeeping chores such as the laundry as well as "light house cleaning and odd jobs around the house [for] 1 to 2 hours[,] four days a week;" and that he could draw cartoons for at least one hour at a time, three times a week. Although Harwood presented contrary evidence to support his claim, we conclude that the record amply supports the ALJ's credibility finding.

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.