# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-3422

_____

John J. Davis,

*Plaintiff - Appellant,*

v.

Andrew Saul, Commissioner, Social Security Administration,

*Defendant - Appellee.*

_____

No. 18-3451

_____

Destiny M. Thurman,

*Plaintiff - Appellant,*

v.

Andrew Saul, Commissioner, Social Security Administration,

*Defendant - Appellee.*

_____

No. 18-3452

_____

Kimberly L. Iwan,

*Plaintiff - Appellant,*

v.

Andrew Saul, Commissioner, Social Security Administration,

*Defendant - Appellee.*

_____

Appeals from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: November 13, 2019
Filed: June 26, 2020

_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Appellants John Davis, Destiny Thurman, and Kimberly Iwan applied unsuccessfully for social security benefits in 2013 or 2014. Each brought an action in the district court, asserting that the administrative law judge who denied the application for benefits was not properly appointed in accordance with the Appointments Clause of the Constitution. Art. II, § 2, cl. 2. None of the claimants raised this argument during proceedings before the Social Security Administration (SSA). The district court[1] ruled in all three cases that the claimant waived the argument by failing to raise it before the agency. We conclude that the district court properly declined to consider the issue, and we affirm the judgments.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

## I.

The three claimants applied for disability insurance benefits and supplemental security income in either 2013 or 2014. The agency denied their applications on initial review and on reconsideration, and each claimant requested and received a hearing before an administrative law judge. After an ALJ denied each application, the claimants sought review by the agency's Appeals Council, and the Appeals Council denied review. None of the claimants ever objected to the manner in which the ALJ was appointed.

All three claimants sought review of the agency's decision in the district court under 42 U.S.C. § 405(g). While the cases were pending, the Supreme Court in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), decided that administrative law judges of the Securities and Exchange Commission are "Officers of the United States" who must be appointed by the President, a court of law, or a head of a department. *Id.* at 2051, 2055. The Court ruled that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Id*. at 2055 (internal quotation omitted).

As of 2017, administrative law judges in the Social Security Administration were not appointed by the head of the agency, but rather by lower-level officials. While *Lucia* was pending at the Court, the SSA issued several emergency measures. On January 30, 2018, the agency's Office of General Counsel warned ALJs that they might receive Appointments Clause challenges and instructed them not to "discuss or make any findings related to the Appointments Clause issue," because the "SSA lacks the authority to finally decide constitutional issues such as these." The agency directed the ALJs to acknowledge when the issue had been raised. *Soc. Sec. Admin.*, *EM-18003: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process* (2018).

On June 25, shortly after the Court decided *Lucia*, the SSA's Office of Hearing Operations issued a revised emergency measure. This direction continued to instruct ALJs to acknowledge, but not to address, challenges based on the Appointments Clause. *Soc. Sec. Admin.*, *EM-18003 REV: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process – UPDATE* (2018).

Finally, on August 6, the Office of Hearing Operations issued another revised version of the same emergency measure. This one announced that (i) the agency's Acting Commissioner recently had ratified the appointment of all ALJs, thereby curing any defect related to the Appointments Clause, and (ii) ALJs should continue to acknowledge and report any Appointments Clause challenges that were raised before the ratification date. *Soc. Sec. Admin.*, *EM-18003 REV 2: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process – UPDATE* (2018).

In their complaints, Davis, Thurman, and Iwan did not raise a challenge to the appointment of the ALJ who decided their cases. A magistrate judge, considering only the issues raised by each claimant, recommended that the district court affirm the agency's decision denying each application for benefits. In August 2018, each claimant moved for leave to file a supplemental brief that would raise an Appointments Clause challenge for the first time. The district court allowed briefing, but declined to consider the new argument. Citing *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003), the court ruled in each case that because the claimant did not raise an Appointments Clause challenge before the ALJ or Appeals Council, the claimant had waived the issue. Other circuits presented with the issue have disagreed on whether exhaustion of the issue before the agency is required. *Compare Carr v. Comm'r*, Nos. 19-5079, 19-5085, 2020 WL 3167896 (10th Cir. June 15, 2020), *with Cirko v. Comm'r*, 948 F.3d 148 (3d Cir. 2020).

II.

The claimants sought review of the agency's decisions in federal court under 42 U.S.C. § 405(g). That section provides that "[a]ny individual, after any final decision of the Commissioner of Social Security . . . may obtain a review of such decision by a civil action." Because the claimants presented their claims for benefits to the Commissioner, the district court had jurisdiction under § 405(g) to review the agency's decisions. *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976).

Even where a district court has jurisdiction under the statute, however, this court also has required a claimant to exhaust a particular issue before an administrative law judge in order to seek judicial review on that issue. *Anderson*, 344 F.3d at 814. The agency's regulations similarly require a claimant to notify an ALJ before the hearing if the claimant objects to the issues to be decided. 20 C.F.R. § 404.939.

In *Sims v. Apfel*, 530 U.S. 103 (2000), the Supreme Court held that a claimant who was denied benefits by an administrative law judge was not required to exhaust an issue before the Appeals Council in order to seek judicial review. Although the Court said that the reasons for requiring exhaustion are much weaker in a non-adversarial proceeding than in an adversarial proceeding, *id*. at 109-10, the case ultimately was decided on narrower grounds. The deciding vote turned on the fact that the agency told the claimant that she could seek review by sending a letter or filling out a one-page form that should take ten minutes, that only failing to request Appeals Council review would preclude judicial review, and that the Appeals Council would review her entire case for issues. *Id*. at 113-14 (O'Connor, J., concurring in part and concurring in the judgment).

Foreshadowing *Sims*, this court held in *Harwood v. Apfel*, 186 F.3d 1039 (8th Cir. 1999), that a claimant did not forfeit an issue by failing to raise it before the

Appeals Council. *Id.* at 1042-43. The *Sims* plurality favorably cited *Harwood*. 530 U.S. at 112 (plurality opinion). But this court in *Harwood* also acknowledged that failure to raise an issue before either the ALJ or the Appeals Council "perhaps present[s] a stronger case for a waiver rule." 186 F.3d 1043 n.3. Other pre-*Sims* cases from this court appeared to require exhaustion of issues before an ALJ. *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996); *Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir. 1993). Whether a claimant must exhaust issues before an ALJ was not before the Court in *Sims*, 530 U.S. at 107, and our post-*Sims* decision in *Anderson* expressly required that step. 344 F.3d at 814; *see also Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004).

The issue exhaustion requirement is consistent with longstanding principles of administrative law. "Ordinarily an appellate court does not give consideration to issues not raised below." *Hormel v. Helvering*, 312 U.S. 552, 556 (1941). "[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952). "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). In most cases, therefore, "an issue not presented to an administrative decisionmaker cannot be argued for the first time in federal court." *Sims*, 530 U.S. at 112 (O'Connor, J., concurring in part and concurring in the judgment). In determining whether to allow an exception to the ordinary rule, courts should be "guided by the policies underlying the exhaustion requirement." *Bowen v. City of New York*, 476 U.S. 467, 484 (1986).

The claimants advance three interrelated arguments for excusing their failure to raise an Appointments Clause challenge during agency proceedings. They maintain that constitutional claims need not be exhausted, that exhaustion of this particular constitutional challenge would have been futile, and that the court should

exercise its discretion to waive any applicable exhaustion requirement. This court has largely rejected those contentions in litigation arising from another agency. Presented with a constitutional challenge to appointments of members of the National Labor Relations Board, we held that a company waived its claim by failing to raise the issue before the Board: "Constitutional considerations, no matter how important or 'fundamental,' can be forfeited as Justice Scalia has emphasized: 'Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review.'" *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013) (quoting *Freytag v. Comm'r*, 501 U.S. 868, 893 (1991) (Scalia, J., concurring in part and concurring in the judgment)).

In the social security context, the Supreme Court has explained that a claimant need not litigate certain constitutional questions in order to satisfy the *jurisdictional* requirement of the judicial review statute. *Eldridge*, 424 U.S. at 329 n.10; *see Califano v. Sanders*, 430 U.S. 99, 109 (1977). And we may accept that "[i]t is unrealistic to expect that the [Commissioner] would consider substantial changes in the current administrative review system at the behest of the single aid recipient raising a constitutional challenge in an adjudicatory context." *Eldridge*, 424 U.S. at 330.

But those observations do not demonstrate that exhaustion would have been futile here. Application of the exhaustion doctrine is supposed to be "intensely practical." *Bowen*, 476 U.S. at 484 (quoting *Eldridge*, 424 U.S. at 331 n.11) (internal quotation omitted). As a practical matter, the claimants here maintain that hundreds if not thousands of social security claimants may raise for the first time in federal court a challenge to the manner in which administrative law judges were appointed. The practical effect of sustaining that position would be to require the agency to rehear a multitude of cases. Yet if hundreds of claimants had raised an Appointments Clause challenge before the agency, the Commissioner would have been in a position to avoid an administrative quagmire. "Repetition of [an] objection . . . might lead to

a change of policy, or, if it did not, the [agency] would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence." *L.A. Tucker Truck Lines*, 344 U.S. at 37. Even if an individual ALJ was powerless to address the constitutionality of her appointment, the agency head—alerted to the issue by claimants in the adjudicatory process—could have taken steps through ratification or new appointments to address the objection.

For similar reasons, we do not believe this is "one of those rare cases in which we should exercise our discretion" to consider a non-exhausted claim. *Freytag*, 501 U.S. at 879. *Freytag* resolved a constitutional challenge to the appointment of Special Trial Judges of the United States Tax Court. The Court noted that although the petitioner did not raise the issue before the Tax Court, the claim implicated "the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers." *Id.* (quoting *Glidden Co. v. Zdanok*, 370 U.S. 530, 536 (1962)). This court, however, has not understood *Freytag* to mean that all Appointments Clause challenges are exempt from the typical requirements of issue exhaustion. *RELCO Locomotives*, 734 F.3d at 798. We consider here the practicalities of potentially upsetting numerous administrative decisions because of an alleged appointment flaw to which the agency was not timely alerted. We also recognize the perverse incentives that could be created by allowing claimants to litigate benefits before an ALJ without objection and then, if unsuccessful, to secure a remand for a second chance based on an unexhausted argument about how the ALJ was appointed. *See Freytag*, 501 U.S. at 895 (Scalia, J., concurring in part and concurring in the judgment). Under all of the circumstances, we do not view this as a rare situation in which a federal court should consider an issue that was not presented to the agency.

The judgments of the district court are affirmed.

_____